UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LESLIE F. PENDERS,

                              Plaintiff,

           -vs-                                   07-CV-301-JTC

RIGAKU MSC,

                              Defendant.

---

## INTRODUCTION

In this action, plaintiff Leslie F. Penders alleges that defendant Rigaku MSC, now known as Rigaku Americas Corporation ("Rigaku"), terminated his employment because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Defendant moves for summary judgment dismissing the complaint. For the reasons that follow, defendant's motion is granted.

## BACKGROUND AND FACTS

Rigaku develops x-ray component products for scientific and commercial use (*see* Item 29, ¶ 1). Plaintiff joined Rigaku in June 1988 as a field salesperson, and was appointed to the position of National Sales Manager in 1994. He returned to a field sales position in 2000 (*id.* at ¶¶ 2-6).

On August 8, 2001, plaintiff signed a document entitled "EMPLOYEE HANDBOOK ACKNOWLEDGEMENT [sic]," which states as follows:

> By my signature above, I am indicating that I have received my copy of the [Rigaku] Employee Handbook. . . .

> . . . .
>
> I understand this Employee Handbook sets significant changes that will affect my relationship with RIGAKU. The most significant change will likely be the addition of RIGAKU's new alternate dispute resolution (ADR) program that culminates in binding arbitration.
>
> I agree to read the Handbook and follow and abide by its contents.
> . . .
>
> . . . .
>
> I understand the Employee Handbook mandates an impartial two-step Alternate Dispute Resolution (ADR) Program to fairly resolve any disputes that might arise if I am terminated, but believe that termination was illegal or not in conformity with RIGAKU rules or policies. The ADR program must be promptly initiated, or certain legal rights might be lost.

(Item 30, Ex. E, p. 74).[1]

That same day, plaintiff also signed a document entitled "EMPLOYEE AGREEMENT TO PARTICIPATE IN RIGAKU'S ALTERNATE DISPUTE RESOLUTION ('ADR') PROGRAM," which states as follows:

> This agreement is between me, and [Rigaku]. I understand that if I am terminated and believe my release is unlawful, or in violation of RIGAKU's rules or policies, . . . I will bring any challenge to that decision to RIGAKU's two-step Alternate Dispute Resolution Program set out in greater detail in my Employee Handbook.
>
> . . . .
>
> I understand that I can, and must, bring any and all claims I might have under this program. That includes, but is not limited to, alleged claims for violations of the civil rights statutes (state or federal), such claims covered by statutes, including sex harassment, age, disability, or race discrimination.

---

[1] Item 30 is a 118-page document entered on the court's docket as the Affidavit of defense counsel Robert P. Heary, Esq. Similarly, Item 37 is an 83-page document entered on the court's docket as Plaintiff's Memorandum in Opposition to Defendant's Summary Judgment Motion. Neither document is consecutively paginated. Numerical references to these items are to the page numbers indicated on the court's electronic filing system toolbar.

> Also, covered by the program are alleged claims for common law rights, such as privacy, slander, negligence, breach of contract (written or implied), etc.
>
> . . . .
>
> **I understand that if I do not bring my claims in a timely way by filing a written notice with the neutral administrator within six (6) months of the date my claim accrued, or within the statutory time limits, or consistent with other applicable law, the claim may be lost or barred forever.**
>
> I understand that by requesting mediation and arbitration, I have waived the right to adjudicate claims arising under common law or statutory law in a court or judicial forum, and instead choose to mediate and arbitrate these claims. Because RIGAKU's policy promotes mediation and arbitration as the exclusive remedy for claims covered by this policy, I agree to be bound by those laws best promoting the enforceability of mediation and arbitration agreements, including the Federal Arbitration Act, federal common law, and any applicable state laws promoting arbitration.

(Item 30, Ex. E, p. 75).

On January 11, 2005, plaintiff met with his supervisor, Catherine Klein, along with Senior Vice President Melvyn Kitagawa, and Human Resources Manager Barbara Williams, who informed plaintiff that his employment with Rigaku was being terminated due to unsatisfactory performance (Item 29, ¶¶ 13-14). At that meeting, plaintiff signed a document entitled "Termination Certification," which states:

> I have been advised of the Alternate Dispute Resolution Policy set forth in the Employee Handbook. I understand that the use of the Policy is the only method to formally review or challenge my termination. I understand that the Policy has strict time limits and if I determine to elect to use the Policy, I must do so within six (6) months of my termination, or, in the case of a claimed statutory violation, the time limits set forth in the applicable statute of limitations. I have been provided with a copy of the Policy and a form to request Mediation/Arbitration, if I choose.

(Item 30, Ex. E, p. 76). Plaintiff was also presented with a letter summarizing the terms of a proposed severance agreement (*id.* at p. 77), which he refused to sign. He was 62 years old at the time of his termination, and had been working for Rigaku for more than 16 years.

Plaintiff did not seek the remedies of mediation and arbitration under Rigaku's ADR Policy. Instead, on May 9, 2007, he filed this action claiming that he was terminated from his employment because of his age, in violation of the ADEA (Item 1).[2] He also claims that his termination constituted a breach of his written employment contract, and that defendant failed to provide the compensation promised by the severance agreement (*id.*).

Following unsuccessful early settlement efforts before a Magistrate Judge, and upon completion of discovery, defendant moved for summary judgment seeking dismissal of the complaint on the ground that the claims are barred by plaintiff's written agreement to participate in the mandatory ADR program. Defendant also contends that plaintiff cannot establish a *prima facie* claim of age discrimination, or a claim for breach of contract (*see* Item 31). Plaintiff responds that equitable considerations preclude enforcement of the agreement to participate in ADR, and that genuine issues of material fact remain for trial with respect to his *prima facie* discrimination claim (*see* Item 37, pp. 72-83).

For the reasons that follow, the court finds that plaintiff's agreement to participate in defendant's ADR program is entitled to binding effect as a matter of law, and that defendant is entitled to summary judgment dismissing the complaint.

---

[2] Plaintiff alleges, and defendant does not dispute, that he filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 23, 2005, within 180 days of his termination. Neither party has submitted a copy of the charge or the EEOC's disposition as part of the pleadings or the summary judgment record.

**DISCUSSION**

The issues raised in this action with respect to enforcement of an agreement to submit federal statutory employment discrimination claims to the employer's alternate dispute resolution program were recently addressed by this court in *Brown v. St. Paul Travelers Companies*, 559 F. Supp. 2d 288 (W.D.N.Y. 2008), *aff'd*, 331 Fed. Appx. 68 (2d Cir. 2009). As an initial matter of procedure, the court held that the summary judgment standard is appropriate in cases where the district court is required to determine whether the parties have agreed to arbitration as the exclusive remedy for the dispute underlying the federal claims presented in the lawsuit. *Brown*, 559 F. Supp. 2d at 290-91 (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "Accordingly, with respect to the question of arbitrability, defendant[ ] must 'show that there is no genuine issue as to any material fact and that [it is] entitled to a judgment as a matter of law.'" *Id.* at 291 (quoting Fed. R. Civ. P. 56(c)(2)). In response, the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to avoid summary judgment, plaintiff must come forward with at least some proof that "there is an issue of fact as to the making of the agreement for arbitration . . . ." *Bensadoun*, 316 F.3d at 175. "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980), *quoted in Boran v. Columbia Credit Services, Inc.*, 2006 WL 3388400, at *2 (D.Conn. November 21, 2006).

Courts in the Second Circuit have considered the following three criteria in determining the arbitrability issue: "(1) whether the parties agreed to arbitrate; (2) whether the parties' claims fall within the scope of the agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable." *Brown*, 559 F. Supp. 2d at 290 (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)). It is clear from the background discussion above that plaintiff's ADEA claim is encompassed by Rigaku's ADR policy ("I understand that I can, and must, bring any and all claims I might have under this program . . . [including] . . . claims for violations of . . . the [federal] civil rights statutes . . . .") (Item 30, Ex. E, p. 75). It is also clear that "nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Accordingly, as in *Brown*, "[t]he only factor at issue in this case is whether the parties agreed to arbitrate." *Brown*, 559 F. Supp. 2d at 290.

To determine this issue, courts rely on "generally accepted principles of contract law." *Genesco*, 815 F.2d at 845. Under those general principles, "a person who signs a contract is presumed to know its contents and to assent to them." *Berger v. Cantor Fitzgerald Securities*, 967 F. Supp. 91, 93 (S.D.N.Y. 1997). Plaintiff signed the agreement to participate in ADR, and is bound by the agreement "unless [ ]he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract." *Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (citing *Gilmer*, 500 U.S. at 33; *Genesco*, 815 F.2d at 845-46; and *Berger*, 967 F. Supp. at 93).

In *Arakawa*, the court found the plaintiff's receipt of an employee handbook setting forth the company's binding arbitration policy, as acknowledged by her signature on a document which itself reiterated the terms of the policy, to be sufficient evidence of the parties' agreement to arbitrate. *See Arakawa*, 56 F. Supp. 2d at 352. In this case, Mr. Penders signed three separate documents—the Employee Handbook Acknowledgment, the Agreement to Participate in ADR, and the Termination Certification—each providing a written affirmation of the employee's understanding that ADR was the exclusive means for a formal challenge to termination of employment. By signing these documents, plaintiff "clearly . . . evinced an intention to be bound by the agreement." *Brown*, 559 F. Supp. 2d at 291 ("Plaintiff's statement, that she has no recollection or record of receiving the employee handbook and arbitration policy, despite the fact that it was distributed on at least six occasions during her employment, is thus not sufficient to raise a genuine issue of material fact.").

Plaintiff contends that equitable considerations preclude the application of the mandatory ADR policy, citing *Gilmer*. In that case, the plaintiff argued that the agreement to arbitrate his ADEA claim should be set aside because of the unequal bargaining power between employers and employees. The Supreme Court rejected this argument, finding that "[m]ere inequality of bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer*, 500 U.S. at 33. Rather, in accordance with the stated purpose of the Federal Arbitration Act "to place arbitration agreements on the same footing as other contracts," the employee must show "that the agreement to arbitrate resulted from the sort of fraud or overwhelming

economic power that would provide grounds 'for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2).

No such showing has been made here. Indeed, plaintiff has not alleged that he was unduly coerced or defrauded into signing the Agreement to Participate in ADR or the Employee Handbook Acknowledgment. He does argue that he was in a state of shock after the January 11, 2005 meeting with Mr. Kitagawa, Ms. Klein, and Ms. Williams, and was not given an ample opportunity to review the Termination Certification prior to signing it. However, that document simply restated the exclusivity of the remedies under the ADR program and created no new contractual obligations which might have been impaired by any undue coercion resulting from the circumstances of the January 11, 2005 meeting. In any event, there is nothing in the record to indicate that those circumstances presented the level of duress or coercion which courts have found necessary to justify non-enforcement of an agreement to arbitrate. *See, e.g., Arakawa*, 56 F. Supp. 2d at 352 (citing cases).

Plaintiff also contends that it would be inequitable to enforce the ADR policy in the face of multiple instances of defendant's clear and open disregard for other provisions of the Employee Handbook, particularly with respect to performance evaluations and implementation of disciplinary procedures prior to termination. Even accepting the allegations regarding defendant's conduct as true and drawing all reasonable inferences in plaintiff's favor, no rational juror could find that these circumstances amount to a "disturbing showing of unfairness, undue oppression, or unconscionability" sufficient to create a genuine issue of material fact with respect to the arbitrability issue. *Klos v. Lotnicze*, 133 F.3d 164, 169 (2d Cir. 1997), *quoted in Arakawa*, 56 F. Supp. 2d at 352.

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Based on this analysis, the court finds that defendant has met its burden of demonstrating the absence of any genuine issue of material fact with respect to the enforceability of the parties' express written agreement that Rigaku's ADR program provides the exclusive remedy for challenging plaintiff's termination from his employment, and that plaintiff has failed to come forward with any proof to support revocation of that agreement. Accordingly, defendant is entitled to summary judgment as a matter of law dismissing the complaint.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Item 28) is granted, and plaintiff's complaint is dismissed. This ruling is made without prejudice to the parties' rights under the Agreement to Participate in Rigaku's ADR Program, as discussed herein.

The Clerk of the Court is directed to enter judgment for defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: July 12, 2010
p:\opinions\07-301.june172010